Matthew M. Levy, J.
This is an application for an order, under article 78 of the Civil Practice Act, directing the civil service commission of the City of New York to restore the petitioner to the position of sanitation man, class B, in the city’s department of sanitation, and to pay the petitioner his salary from the date of his removal, with interest, and to continue such payment during his incumbency of the position. The respondents have cross-moved for an order, pursuant to section 1293 of the Civil Practice Act, dismissing the petition as a matter of law.
The petitioner was born abroad. He emigrated to this Country in 1946. He served in the United States Army from May 28, 1951, until January 27,1953, when he was honorably discharged. In February, 1953 (the month after his military discharge), the petitioner submitted an application to the civil service commission to participate in the examination for sanitation man, class B. He stated thereon that he was a citizen of the United States. In fact, he was not. The petitioner successfully completed his examination and was placed on the eligible list. In February, 1954, he was sworn in as a citizen of the United States. In January, 1955, he was certified and appointed as a sanitation man, class B, in the department of sanitation, and commenced working as a provisional. On March 9, 1955, he received notice that his certification and appointment had been revoked because of lack of citizenship at the time of application for examination. The petitioner requested that he be reinstated, but, on February 28, 1956, this request was rejected by the civil service commission. The instant proceeding for court review was commenced on June 28, 1956.
In the clearest of language, statute and regulation require citizenship (nothing less) at the time of filing the application for examination (not later). The Civil Service Law (§ 14, subd. 3, par. [f]) provides, insofar as here applicable, as follows: ' ‘ 3. Application for examination. The civil service department and municipal commissions shall require intending competitors to file * * * a formal application in which the applicant shall state under oath: * * * (f) That he is a citizen of the United States,”
*771 Subdivision 2 of Rule IX of the Rules for the Classified Civil Service (which itself has the force and effect of law — Civil Service Law, § 6, subd. 1) reiterates this requirement in unequivocal terms: ‘ ‘ Every applicant for competitive examination must be a citizen of the United States ’
The words ‘ ‘ Every applicant ’ ’ in the rules indicate that there are no exceptions. The phrases ‘ ‘ intending competitors” in the statute and ‘ ‘ applicant for competitive examination ’ ’ in the Rules show that the requirement must be met at the time of application rather than at the time of certification or appointment. The words “ is a citizen ’ ’ cannot be changed to mean ' ‘ will be a citizen ’ ’. The word ‘ ‘ must ’ ’ means that the requirement is mandatory, not discretionary, with the commission, and noncompliance with such requirement renders one’s certification and appointment null and void ab initio as a matter of law. No exception was made by Legislature or commission for aliens who served in the armed forces of the United States. No exception was granted to an applicant who believed that citizenship was automatically conferred on him on the day of his discharge from military service. No exception was allowed for the applicant who thought that the filing of his petition for naturalization and his subsequent swearing-in as a citizen would be formalities. No exception was given to an alien, who, on the advice of a military superior, registered at the Bureau of Immigration and Naturalization immediately after his discharge from the military service, in the expectation that he would receive his citizenship papers within 90 days — and who filed his application for the position now sought after less than a month had elapsed after his military discharge. Nor did the petitioner’s subsequent certification by the respondent commission for the position in question, at a time when in fact he was a citizen, cure the defect of noncitizenship which existed at the time of filing of the application for the position. The result reached may seem a harsh one for the petitioner, who may have innocently thought that he was a citizen, when in fact he was not. But to rule that a man’s ignorance as to his citizenship status could validate an otherwise invalid application, would be violative of the statute, would place a premium on ignorance and would be unjust to the truthful well-informed who refrained from filing an application because of the recognition of his ineligibility.
In Matter of Walden-El v. Brennan (205 Misc. 351, affd. 283 App. Div. 771) there was involved a requirement, established by the commission, that an applicant must be at least 20 years of age at the time of application for the New York City patrolman’s examination. The applicant in the case cited believed that *772 he was 21 and so stated. Actually, he was 19. Four years passed between the fling of the original application and the petitioner’s certification and appointment; he was 23 years old at the time of appointment. Upon discovering the fact that the applicant had been only 19 years of age at the time of application, the commission revoked the appointment. The revocation was upheld by the courts despite the fact that the petitioner was well above the minimum age at the time of his certification and appointment. It was held that the original defect was not cured by the fact that the petitioner had passed his 20th birthday before certification, and that, since he was not eligible to take the examination, his subsequent appointment by the commission was without basis and void.
The petitioner argues that nonage and noncitizenship are not parallel, that the spirit of the legislative intent in opening examinations for this position to citizens would also embrace alien war veterans, and that the broad discretionary powers given the commission in subdivision 4 of section 14 of the Civil Service Law permits the substitution of a certificate of honorable discharge from the military service for a certificate of naturalization as a United States citizen. This contention is insupportable by statute or history.
The requirement of citizenship was enacted by the Legislature in 1939. Since that time, we have lived through World War II and the Korean War. Thousands of New York resident-aliens have participated in each of these wars. Yet, the Legislature, fully aware of this situation, has not seen fit to broaden the statute to include alien war veterans. During this whole period of 17 years, the requirement that applicants for civil service positions must be citizens has remained in the statute. - In view of this long legislative silence, it is impossible to infer a legislative intent to extend the privilege of application to alien war veterans. Nor does a reading of subdivision 4 of section 14 of the Civil Service Law aid the petitioner’s argument that the ■ commission is given discretion, therein, to vary the requirements of paragraph (f) of subdivision 3 of section 14. Subdivision 4 merely gives the commission discretion to disqualify applicants for certain stated reasons. It does not give the commission discretion to qualify any applicant who does not meet the mandatory statutory requirements. There can be no doubt that if the commission had known, at the time of the petitioner’s application, that he was not a citizen, it would have been bound by the statute to exclude Mm from the examination.
It follows clearly that citizenship is a material fact necessary for admission to the examination — not an immaterial irregular *773 ity as claimed by the petitioner. Citizenship is an indispensable requirement concerning which the commission has no discretion and without which the petitioner had no right of application for examination. And it matters not whether, in claiming to be a citizen when he was not, the petitioner acted in good faith or was guilty of fraud, whether he erred in judgment or endeavored to be deceitful (cf. Matter of McInerney v. Valentine, 181 Misc. 1062). The plain fact is that the subsequent certification and appointment were without their needed basic support, and as a consequence were null. Revocation necessarily followed. • The New York City Charter provides (§ 813, subd. f) that the ‘ ‘ personnel director shall have the following powers * * * “ f. To investigate applicants for positions in the civil service; to review their qualifications, and to revoke or rescind any certification or appointment by reason of the disqualification of the applicant or appointee under the provisions of the civil service law, the rules of the civil service commission, or any other law;” and subdivision 3 of section VII of rule V of the New York City Civil Service Commission Rules provides: “ 3. If a person who is not entitled to be certified is certified, such certification shall be revoked by notification to the appointing officer.”
The petitioner relies on Matter of Wolff v. Hodson (285 N. Y. 197) to sustain his contention that once eligibility is determined, and an appointment made, the appointment is conclusive even though an error has been committed. The case, however, hardly sets down so broad a rule. There were two decisive factors present there that are not in the case at bar. Firstly, the court in the Wolff case held that the certification and appointment were not made in reliance on the applicant’s false statement but were due solely to the error of the commission. The latter conclusion is apparent from the facts in the Wolff case. The requirements, as one of the alternatives for eligibility, prescribed that an applicant must have been graduated from high school. Applicant falsely stated that he had attended high school for one year. He did not state that he had been graduated. This false statement could not have misled the commission into certifying and appointing the applicant, since the application, on its face, showed that he did not meet the recognized prescribed qualification of high school graduation. Secondly, the misstatement on the Wolff application related to a qualification for eligibility (educational requirements) which had been promulgated by the commission itself, and not by the Legislature, and the court held that the commission is deemed to have waived its own requirements for eligibility where the certifica *774 tion is due to its own error (cf. Matter of Romanchuk v. Murphy, 200 Misc. 987). The Court of Appeals then went on to sayip. 202) that, if the necessary qualification were imposed by ordinance or statute, the commission would be without power to waive such statutory requirement, and any appointment in contravention of such statute would be null and void. The dictum is clearly applicable to the case at bar since citizenship at the time of application is basically a statutory requirement.
In Matter of Shraeder v. Kern (287 N. Y. 13, reargument denied 287 N. Y. 760) decided eight months after Matter of Wolff v. Hodson (supra) the notice for the examination provided that an applicant must (1) be between the ages of 18 and 32, or (2) have been employed for not less than three months in a public welfare department or an emergency relief bureau between July 1, 1936 and June 30, 1937. The petitioner, who was 47 years old, claimed compliance with the second alternative requirement by stating that she had been employed in a public welfare department between March 15, 1937 and July 27, 1937. Following her appointment, it was discovered that the employment dates given were false and that the actual dates of her employment did not comply with the necessary requirements. In upholding the petitioner’s dismissal, the court said, at page 14, that the commission has not only the power, but the “ duty to rescind a certification where an applicant has made a misstatement of a material fact upon which the Commission has relied and upon which it has based its conclusion that the applicant was eligible to take the examination ’ ’.
The next point the petitioner makes is that, under section 22 of the Civil Service Law, a veteran may be removed only for incompetency or misconduct and must be given due notice and afforded a hearing, and that at no time was the petitioner afforded a hearing in connection with his removal. The rule is that where a certificate or appointment is void ah initio because the appointee was never eligible, the provisions of the Civil Service Law as to charges, notice and hearing are inapplicable (Matter of Ferdinand v. Moses, 26 N. Y. S. 2d 382, affd. 262 App. Div. 1001, motion for leave to appeal denied 263 App. Div. 706). Section 22 protects only those veterans who were lawfully appointed. It has no application to a case where the appointment and certification are void as a matter of law. Although the petitioner in Matter of Walden-El v. Brennan (205 Misc. 351, affd. 283 App. Div. 771, supra) was a veteran, it was held that he was not entitled to the protection of section 22 because his appointment was void from its inception. Here, *775 too, there was no removal for cause, but revocation for disqualification that nullified the appointment ab initio. The other main point of contention between the parties is whether this proceeding was instituted within the four-month statutory period required by section 1286 of the Civil Practice Act. That section provides that “ a proceeding * * * must be instituted # * * within four months after the determination to be reviewed becomes final and binding, upon the petitioner or the person whom he represents, either in law or in fact ”. Did the petitioner institute this proceeding for review ‘ ‘ within four months after the determination to be reviewed [became] final and binding” within the meaning of section 1286?
If the “ determination ” became “ final and binding ” when the commission directed the petitioner’s dismissal, then this proceeding is barred, because such dismissal was effectuated on March 9, 1955, while this proceeding was commenced on June 28, 1956, more than a year later. But if the determination did not become ‘ ‘ final and binding ’ ’ until February 28, 1956, the date of the commission’s rejection of the petitioner’s request for reinstatement, then this petition for review was brought within the statutory four-month period and was timely instituted. I hold that the four-month limitation begins to run from the date of the revocation of certification and appointment, not from the later refusal of the request for reinstatement.
In Matter of Hall v. Leonard (260 App. Div. 591, affd. 285 N. Y. 719) the superintendent of buildings denied, on January 11,1940, the petitioner’s application for a permit to construct a building. On February 8, 1940, the superintendent, in identical form, disapproved a second application. It was held that the renewal of the application did not extend the time limitation of section 1286 and that the proceeding was therefore barred because more than four months had passed since the first denial. In Matter of Weinstock v. Hammond (270 N. Y. 64) the court held that where an employee was dismissed, and the City Charter provided for a rehearing on condition that the employee waive all claim for back pay, the four-month limitation runs from the time of the employee’s original dismissal rather than from the time when a rehearing is denied or the right to a rehearing expires. The court stated that a power so conditional is not authority to rehear the matter within the sense of the language of section 1286 as to what is a final and binding determination (see, also, Matter of Brown v. City of New York, 198 Misc. 147).
*776 The decisive factor in all of the cited cases was that there was no statutory requirement that the petitioner ask' for a rehearing or reconsideration or take an appeal administratively before bringing an article 78 proceeding for court review. If the petitioner here was required to exhaust his administrative remedies by appealing his dismissal to the commission before invoking article 78 in the court, then the commission’s decision on the appeal would have constituted the final and binding determination. Assuming that subdivision 3 of section 22 of the Civil Service Law (having to do with appeals) is applicable to a revocation of appointment as distinguished from dismissal for cause, there is no requirement of appeal to the commission present in the statute. The petitioner could have sought court review immediately after revocation and dismissal (Civil Service Law, § 22, subd. 3), and it follows, therefore, that the four-month period began to run on that date. The voluntary request by the petitioner for a rehearing or reconsideration does not serve to postpone the running of the statutory limitation. This proceeding is, accordingly, necessarily barred by section 1286 of the Civil Practice Act.
The petitioner’s application is denied, and the cross motion of the respondents to dismiss the petition is granted. An order has been entered to that effect.